GOTTFRIED MOLL v. THE RIVERSIDE STORAGE AND
CARTAGE COMPANY (LIMITED).

*Negligence—Directing verdict.*

Plaintiff was injured by falling into an elevator shaft in a ware-
house owned by defendant while loading bales of hops onto his
wagon as lowered by the elevator from an upper story; and it
is held that no negligence can be imputed to the defendant or
its servants, the injury resulting from the negligence of the
plaintiff or his companion, or both, or from pure accident,
and that a verdict should have been directed for the defendant.

Error to Wayne. (Gartner, J.) Argued June 11, 1890.
Decided October 10, 1890.

Negligence case. Defendant brings error. Reversed.
The facts are stated in the opinion.

*Bowen, Douglas & Whiting,* for appellant.
*William Look* and *Harry F. Chipman,* for plaintiff.

GRANT, J. Plaintiff was a teamster, and had been for
over three years in the employ of Eckert & Becker, brew-
ers. Defendant is a limited partnership association own-
ing warehouses. Its building is five stories high, facing
Woodbridge street, with an alley in the rear. The several
floors are used for storage purposes. A freight elevator
in the rear of the building on the alley runs from the
basement to the top floor. It is a combination hand or
power elevator, started in motion by pulling a large rope
cable, and, when moving, the noise can be heard through-
out the building. The openings to the elevator shaft on
the inside of the building are protected by suitable guards.
The shaft has an opening upon the alley, through which

merchandise is loaded upon, and unloaded from, trucks. This opening is used only for this purpose, and is kept closed by a door when not in use. The sill of this opening is 2 feet 8 inches above the pavement, its width 4 feet 6 inches, the depth of the stone sill 18 inches, and the height of the sill from the first floor of the warehouse is 5 feet 4 inches. When freight is loaded or unloaded the platform of the elevator is on a level with the sill. The opening has no guard, nor is one required, as it is always kept closed, except when used in loading or unloading merchandise.

Plaintiff and a co-employé were sent to this warehouse with a team to get a load of bales of hops, which Eckert & Becker had stored upon the third floor. The bales were about 5 feet long, 2 feet thick, and weighed about 250 pounds. They presented their order for 30 bales at the office of defendant on Woodbridge street, and were instructed to go to the elevator door. They had been there before. As they stopped, the wagon stood in front of the door, about 1½ to 2 feet from the side of the building, and one Kelly, the foreman of the warehouse, stood on the sill awaiting them. The platform of the elevator was then on a level with the sill. Kelly went up with the elevator to get the first load. Plaintiff and his companion stood on the sill while the elevator was up. There was no difficulty in seeing the shaft, nor in hearing the noise of the moving elevator. The elevator was up about five minutes, when it returned with six bales, stopping at the sill. Plaintiff and his companion tipped the bales from the platform onto the sill, and then pushed them over onto the truck, placing them crosswise on the truck, with the ends projecting about one foot beyond the side. As soon as the bales were removed from the elevator, Kelly, who remained on the third floor, took up the elevator for a second load. Plaintiff and his com-

panion stood on the sill as before. Another load of six bales soon came down, and was unloaded from the elevator by plaintiff and his companion, and placed upon the truck. Kelly, still standing upon the third floor, and seeing that the bales were all removed and the elevator clear, hoisted it for the third load. The bales were placed upon the wagon in two tiers of six each. The last bale of the second load from the elevator had not been put in position, but lay crosswise, with the end nearest plaintiff on a level with his breast, the bale projecting over the side of the wagon, the plaintiff standing with one foot on the wagon and the other on the sill. While plaintiff was standing in this position, and after the elevator had ascended above the door through which the bales had been taken from the elevator to the truck, plaintiff's companion walked round in front of the horses to the opposite side of the truck to assist in placing the bale in its proper position. The testimony is conflicting as to whether his companion had hold of the bale at the time of the accident; but, about the time that his companion had reached his place to assist him, the bale, for some cause, turned, striking the plaintiff in the breast, and he was either thrown or stepped back, and fell into the shaft, and was injured.

Both plaintiff and his companion testify that they gave no signal to Kelly, and expected none from him, when the elevator was unloaded. They knew that, as soon as it was unloaded, it would return for another load. It had returned in the usual way, and under precisely the same circumstances as before. Plaintiff and his companion were not strangers to the place, nor to the manner in which the work was done. They knew all the dangers. The entire situation could be seen at a glance. The elevator was clear, the bales upon the wagon, and plaintiff and

his companion outside. What reason had Kelly to suppose that they had any further use for the platform of the elevator in arranging their load, or that an accident was liable to happen in arranging the bales upon the wagon? There is no evidence that Kelly could see them on the wagon, or that he had any intimation that they were having any difficulty. Under this record, no negligence can be imputed to the defendant or its servants. The injury was either the result of the negligence of plaintiff or his companion, or both, or of pure accident. We do not think an authority can be found sustaining liability under such circumstances.

Plaintiff's counsel relied upon the case of *Dehring v. Comstock*, 78 Mich. 153, but that case is in no respect similar to this. The plaintiff in that case, a woman, was walking along the sidewalk, when, according to her own testimony, a bale of hay was thrown from a barn-loft onto the sidewalk, without any warning or knowledge upon her part that other bales had just been thrown out. On all the essential points in that case, the testimony was conflicting, while in this there is no dispute on the material facts. The circuit judge in this case should have charged the jury to find a verdict for defendant.

Judgment reversed, and new trial ordered, with costs of both courts.

The other Justices concurred.